UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUSEUM OF HANDCAR TECHNOLOGY LLC,<br><br>Plaintiff,<br><br>v.<br><br>TRANSPORTATION AGENCY FOR MONTEREY COUNTY,<br><br>Defendant. | Case No. 24-cv-08598-EKL<br><br>**ORDER GRANTING IN PART MOTION TO VACATE PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 84 |

The Museum of Handcar Technology LLC (the "Museum") operates a successful handcar tour business on the historic Monterey Branch Line railway. The Transportation Agency for Monterey County (the "TAMC") decided not to renew the Museum's lease, then brought an unlawful detainer action to evict the Museum. The TAMC asserted that it needed to evict the Museum to begin construction on the SURF! Busway and Bus Rapid Transit Project (the "Project"). The Museum sought a preliminary injunction. The Museum claimed that the TAMC was retaliating against it for exercising its First Amendment rights to oppose the Project.

After receiving extensive evidence and argument, the Court found that the Museum demonstrated a likelihood of success on its First Amendment retaliation claim. Order Granting Prelim. Inj. in Part at 7-13, ECF No. 71 (the "PI Order"). The Museum submitted significant evidence of retaliation, whereas the TAMC's evidence confirmed that the Project was *not* ready to begin construction. *Id*. at 12-13, 15. The Court found that the Museum established a likelihood of irreparable harm, and that the balance of hardships and the public interest favored an injunction because the Museum's continued operations were not delaying the Project. *Id*. at 13-17. Thus, on April 14, 2025, the Court enjoined the TAMC "from seeking, requesting, or applying for a writ of possession based on any judgment obtained in the unlawful detainer action." *Id*. at 20.

The Court acknowledged that the balance of hardships may "shift if and when the Project is ready to begin construction." *Id*. at 19.  In that event, the Museum's continued operations might prevent construction of the Project, thereby delaying "important public benefits to Monterey County, including a low-cost public transit option for many who live and work there." *Id*. at 17. To account for this possibility, the Court instructed that:

> [T]he TAMC may file a motion to vacate th[e] injunction if it can demonstrate that construction work for the Project will commence imminently, and that the Museum must be evicted before construction can begin.  If the TAMC files such a motion, the Court will expect a detailed evidentiary showing that the Project is fully funded; that all required permits and approvals have been obtained; that all pre-construction conditions have been met; and that construction cannot begin unless the Museum is evicted.

*Id*. at 19.

On May 12, 2025, the TAMC filed a motion to vacate the preliminary injunction.  Mot. to Vacate, ECF No. 84.  On June 23, 2025, after briefing concluded, the Court held an evidentiary hearing and heard argument.  At the hearing, the Court received testimony from Lisa Rheinheimer, Deputy Chief Executive Officer of the Monterey-Salinas Transit District ("MST"), who serves as MST's "primary project manager" for the Project.  6/23/25 Hr'g Tr. 13:17-24, ECF No. 110 ("Hr'g Tr.").  In light of this testimony and other new evidence, the Court finds that the TAMC and MST soon will be ready to move forward with important work on the Project.  This upcoming work will require the Museum to vacate the leased premises.

Accordingly, for the reasons set forth below, the Court GRANTS in part the TAMC's motion to vacate the preliminary injunction.

I.     **EVIDENTIARY OBJECTIONS**

The TAMC and the Museum each object to certain evidence offered by the other party. Because the motion to vacate relates to a preliminary injunction order, the Court applies the evidentiary standards that govern at the preliminary injunction stage.  "[G]iven the haste that is often necessary" at this stage, the Court may rely on "procedures that are less formal and evidence that is less complete than in a trial on the merits." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1189-90 (9th Cir. 2024) (quoting *Univ. of Texas v. Camenisch*, 451 U.S.

2

390, 395 (1981)).  "[T]he Federal Rules of Evidence do not strictly apply" here.  *Id*. at 1189.  Instead, evidentiary issues typically "go to weight rather than admissibility."  *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019) (quoting *Go Daddy Operating Co. v. Ghaznavi*, No. 17-cv-06545-PJH, 2018 WL 1091257, at *14 (N.D. Cal. Feb. 28, 2018)).  The Court may consider hearsay.  *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc)).

### A.     The TAMC's Objections

The TAMC submitted 30 pages of evidentiary objections as a separate document from its reply brief.  *See* ECF No. 101.  This violates Civil Local Rule 7-3(c), which requires that "[a]ny evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum."  Through this maneuver, the TAMC essentially tripled the length of its reply brief.  *See* Civil L.R. 7-3(c) ("[T]he reply brief or memorandum may not exceed 15 pages of text.").  The TAMC offers no good reason for violating Local Rule 7-3(c).  The TAMC should have withdrawn its improper objections when asked to do so by the Museum, but instead, it downplayed the violation as a "formatting mistake."  Gentry Decl. Ex. B, ECF No. 106-1.

The Court GRANTS the Museum's motion to strike the TAMC's improper objections.  *See* Mot. to Strike, ECF No. 106.  The Museum properly included its own evidentiary objections within its opposition brief, so it would be unfair for the Court to consider the TAMC's extensive improper objections.  However, the Court has independently assessed evidentiary issues to the extent they are relevant to the Court's ruling on the motion to vacate.  *See Hennighan v. Insphere Ins. Sols., Inc*., 38 F. Supp. 3d 1083, 1094-95 (N.D. Cal. 2014).

### B.     The Museum's Objections

The Museum objects to two aspects of the Muck Declaration dated May 12, 2025.  First, the Museum objects that Mr. Muck lacks personal knowledge regarding certain details of the Project's funding.  *See* Opp. at 9-10, ECF No. 98.  This objection is overruled because Mr. Muck has personal knowledge of these details.  *See* Muck Reply Decl. ¶ 6, ECF No. 103.  Second, the Museum objects to the relevance of Mr. Muck's statement that the Project is not "dead" and that construction delays are typical.  This objection is moot because the Court did not rely on that

portion of the Muck Declaration in ruling on the motion to vacate.

The Museum also objects to two aspects of the Rheinheimer Declaration dated May 12, 2025. First, the Museum claims that Ms. Rheinheimer lacks personal knowledge that the Museum is "out of compliance" with California Coastal Commission requirements. *See* Rheinheimer Decl. ¶ 38, ECF No. 86. This objection is moot because the issue is immaterial to the Court's ruling on the motion to vacate. Second, the Museum objects that Ms. Rheinheimer lacks knowledge and foundation for her claim that soil and seed collection may require "track removal." *See* Rheinheimer Decl. ¶ 22. This objection is also moot because the TAMC no longer relies on this point, as Ms. Rheinheimer testified that seed and soil collection did *not* require track removal. Hr'g Tr. 48:16-49:2 (testifying that MST's "biologists have been able to go out and collect seeds . . . while handcars are still operating"); *see also* 68:1-5 (TAMC's counsel confirming the same).

Finally, the Museum objects to certain statements and exhibits as improper reply evidence. *See* Pl.'s Objs., ECF No. 105. The objections are overruled with respect to paragraphs 8 and 9 of the Rheinheimer Reply Declaration, and Exhibits E, F, and I to that declaration. This evidence is proper rebuttal to points made by the Museum in its Opposition. In all other respects, the Museum's objections are sustained.

## II.   LEGAL STANDARD[1]

The purpose of a motion to vacate, dissolve, or modify a preliminary injunction is "to relieve inequities that arise after the original order." *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) (quoting *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 338 (3d Cir. 1993)). Such a motion "is based on new circumstances that have arisen after the district court granted the injunction." *Id.* "A district court has inherent authority to modify a preliminary injunction in consideration of new facts." *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002).

---

[1] The TAMC styled its motion as both a motion for reconsideration and a motion to vacate or dissolve the preliminary injunction. At the hearing, the TAMC acknowledged that this is more appropriately considered a motion to vacate. Hr'g Tr. 90:6-19. Accordingly, the Court does not separately address whether TAMC has met the requirements for a motion to reconsider.

4

### III. DISCUSSION

When the Court issued the preliminary injunction in April, it was "not clear when the Project [would] be construction-ready, or whether and when the Museum must be evicted for construction to proceed." PI Order at 15. The TAMC had obtained a coastal development permit from the California Coastal Commission (the "CCC"), but it was subject to several conditions that had to be met before construction could begin. *Id*. at 15. Those conditions had not been met, *id.* at 16, and there was no evidence that the TAMC could proceed with any part of the Project while compliance efforts were still underway. The evidence before the Court indicated that work would not begin in earnest until at least Summer 2025. *See id.* at 16-17.

Circumstances have changed. The TAMC has produced evidence that the Project is fully funded, and construction is authorized to begin in the City of Marina. *See, e.g.*, Rheinheimer Decl. ¶¶ 11, 13, 24.[2] The TAMC has also shown that the Project soon will be ready to proceed with work that requires the Museum to cease operations and to vacate the leased premises. The operative Project timeline (dated April 23, 2025) provides that railroad track removal must begin by September 9, 2025. *See* Rheinheimer Decl. Ex. A, ECF No. 88-1. Ms. Rheinheimer testified that track removal is a "critical path item" for the Project, meaning that "if the tracks aren't removed, [MST] can't move forward with the [P]roject."[3] Hr'g Tr. 56:7-18, 58:4-23. Any delays will cause a "cascading effect on everything else in the schedule." *Id.* 54:18-55:6. And delaying the track removal work would jeopardize or delay the public benefits of the Project. *See* Rheinheimer Decl. ¶¶ 2, 11, 18, 27. Thus, the TAMC has shown that the balance of hardships and the public interest favor vacating the preliminary injunction by September 2025.

---

[2] The Museum argues that the Project's funding is insufficient. Opp. at 10-12. Ms. Rheinheimer's testimony adequately resolves this concern. *See* Hr'g Tr. 42:10-21, 45:10-22, 46:4-14 (testifying that the current Project budget includes funding for a retaining wall), 44:14-45:9 (testifying that removing contaminated material is "unlikely" to increase costs), 46:20-47:6 (testifying that the construction contract already covers the costs of removing ballast material).

[3] The September start date for this work is roughly consistent with earlier Project timelines that were created before the Court issued the preliminary injunction. *See* PI Order at 17 (noting that the November 2024 Project timeline contemplated that track removal would begin by August 28, 2025); *see also* Clark Decl. Ex. G at 1 row CBW1005, ECF No. 99-7 (March 18, 2025 Project timeline reflecting an October 9, 2025 start date to remove or salvage "existing RR track").

However, the TAMC has not shown that the balance of hardships requires the Museum to cease operations immediately. The TAMC argues that certain pre-construction work has been delayed, including tree removal and environmental mitigation work – specifically, seed and soil collection. The TAMC also claims that it could begin construction in the City of Marina now, but for the Museum's operations. These arguments lack evidentiary support.

First, the tree removal work has been underway since April 2025. Hr'g Tr. 23:3-8. The TAMC identified a single tree that it has been unable to remove because the tree is behind a locked gate that the Museum controls. *Id*. 23:9-14. Another tree in the same area also needs to be removed at some point, but TAMC has not attempted removal yet because it is "waiting for the birds to fledge." *Id.* 28:7-19. In any event, the MST has not asked the Museum whether it could access the area to remove the trees. *See id*. 23:15-24:12. Although the TAMC claims that it will incur an additional $15,000 in tree removal costs, this cost is not directly attributable to the one or two trees at issue. Rather, $15,000 is the total cost of monitoring "all the trees" for birds. *Id.* 50:20-52:12. This monitoring is required for tree removal any time outside of the "September to January 31[] timeframe," *id*. 52:4-9, and thus the expense would be incurred regardless of the Museum's current operations.

Second, seed and soil collection has been underway since May 19, 2025. *Id.* 49:3-5. The MST's hired biologists have been able to collect seeds on Tuesdays and Wednesdays, when the Museum is not operating. *Id.* 40:21-41:10. Although this schedule is "limiting," Ms. Rheinheimer could not say that the seed and soil collection process will be materially delayed. *See id*.; *see also id.* 49:21-50:6. The TAMC's counsel also confirmed that the biologists have been able to conduct their work and comply with the injunction by collecting on "on Tuesdays and Wednesdays, when the handcars are not operating." *Id.* 65:1-7. And, as with tree removal, TAMC and MST have not made efforts to cooperate with the Museum to conduct this work while it continues operating. *Id.* 49:15-20.

Third, the TAMC claims that it is ready to begin construction on the Palm/Del Monte station in the City of Marina, where the Museum operates its ticket booth, but this is an overstatement. Ms. Rheinheimer initially testified that MST could "start construction . . . in

1    Marina today but for the handcar and this particular situation with the injunction." *Id*. 54:8-13;
2    *see also id*. 29:19-30:5.  But she later conceded that construction cannot actually begin "today"
3    because the Project's general contractor still needs to obtain and submit insurance, bonds, and
4    other requirements to MST.  *Id.* 59:10-60:6.  These requirements must be satisfied before "a
5    shovel gets into the ground and [before MST] starts construction in earnest." *Id.* 32:15-33:4
6    (testifying that the contractor should meet these requirements "over the next month or two").[4]

7           The Museum argues that the TAMC changed the Project timeline to "facilitate the
8    modification" of the preliminary injunction and "possibly . . . to further retaliate against the
9    [M]useum for its exercise of First Amendment rights." *Id.* 85:19-86:2.  On the current record, the
10   Court cannot conclude that retaliation was a substantial or motivating factor in the changes to the
11   Project timeline.  The TAMC produced evidence supporting a plausible non-retaliatory
12   explanation for advancing work in the area where the Museum operates.  Ms. Rheinheimer
13   testified that "the only places that were available [to begin work] were the areas within [C]ity of
14   Marina" where the Museum operates.[5] *Id.* 29:19-30:5; *see also id*. 33:5-22 (confirming that the
15   City of Marina has provided permission to proceed with the Project within the City).  "[I]n order
16   for MST to deliver the [P]roject on time and within budget, [MST] needed to be able to advance
17   work in areas where the conditions were cleared." *Id.* 20:9-21:11.  Moreover, the current timeline
18   to begin track removal on September 9, 2025, is generally consistent with timelines that predate
19   the preliminary injunction.  *See id*. 78:19-25 (Museum's counsel acknowledging that track
20   removal has been planned for "the fall of 2025 in virtually every iteration of the schedule").  The
21   consistent target date for track removal undermines an inference of retaliatory motive.[6]

---

[4] The Museum argues that U.S. Fish and Wildlife Service ("FWS") needs to issue a finalized set of mitigation measures to address material changes to the Project.  *See id*. 34:23-35:21.  FWS expects to reissue a finalized set of mitigation measures "in early to mid July." *Id.* 36:2-37:12, 39:9-17.  This process is not expected to delay any work.  *Id.* 37:13-38:12, 38:18-25, 60:7-18.

[5] The MST recently received approval to proceed with construction in Sand City – after the Project timeline was updated to prioritize work in the City of Marina.  *See id.* 30:6-15, 31:17-19 (approval received on June 9, 2025).

[6] At this preliminary stage, the record is incomplete.  The Court is not prejudging whether evidence may support the Museum's position at a later stage of the case, after the Museum has had the full benefit of discovery.

1     In sum, the TAMC has shown that the balance of hardships and public interest will soon favor vacating the preliminary injunction, even though currently the Museum's operations are not delaying the Project. In balancing the hardships, the Court finds that it is appropriate to provide the Museum time to wind down its operations and vacate the leased premises. The Museum requests 60 days' notice, citing to its need to notify its customers and employees, to honor commitments to its customers, and to remove its equipment, perimeter fencing, museum artifacts, and improvements that it made to the railroad tracks. *See* Clark Decl. Ex. I, ECF No. 99-9. The Museum's request is reasonable. The Court will delay vacating the injunction by approximately 60 days.

## IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS that the preliminary injunction issued on April 14, 2025, shall automatically VACATE on August 29, 2025, at 11:59 p.m. PDT. The Court expects that the Museum will cease operations and vacate the leased premises by the time the injunction expires so the TAMC is not required to obtain a writ of possession and evict the Museum.

As indicated on the record at the evidentiary hearing, the Court expects the TAMC to dutifully comply with court orders and the Civil Local Rules, and to litigate this case cooperatively and with respect for judicial and party resources. *See* Hr'g Tr. 6:3-17, 7:6-8:19, 10:11-22, 94:17-25. The Court will not repeat the admonishments here, but notes that failure to comply with any court order, Federal Rule of Civil Procedure, or Civil Local Rule may result in sanctions. *See, e.g.*, Civil L.R. 1-4.

**IT IS SO ORDERED.**

Dated: June 30, 2025

Eumi K. Lee
United States District Judge